213 So.2d 581

**J. C. DAVIS**

v.

**STATE.**

**3 Div. 339.**

Court of Appeals of Alabama.

June 28, 1968.

Jas. D. Straiton, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The defendant was convicted, generally, under an indictment charging in three counts the unlawful manufacture of whiskey, and in the fourth count the illegal possession of a still to be used for the

manufacture of prohibited liquors or beverages.

The evidence for the state tends to show, in March of 1966, a complete whiskey still in a house in Montgomery County. The house, known as the Kirk house, belonged to Mr. Chappell Gray. Mr. Gray's bookkeeper, Parker G. Mount, testified he did not see the man who rented the house but Mr. Gray told him to list it on the ledger sheet as James W. Davis. Several days later the defendant came to Mr. Gray's home to get a meter base for the house. He was driving a light blue 1965 model Dodge automobile. The witness later saw, in the vicinity of the rented house, an automobile of the same description as the car defendant was driving the day he came for the meter base.

Mr. Hiram Lott, an employee of the Bullock County office of the Dixie Electric Co-op, an electric cooperative company which furnishes power in sections of Montgomery County, testified that in January, 1966, a man who in his best judgment was defendant made application for electricity, giving his name as James W. Davis, and that electricity was turned on at the house for which application was made; that he checked the meter number on the Kirk house on March 24, 1966, and found service was in the name of James W. Davis.

J. D. Gafford a fingerprint and handwriting expert with the Sheriff's Department of Montgomery County, testified he compared the signature of J. W. Davis on the application for electricity with a signature he knew to be that of J. C. Davis, the defendant, and that the handwriting was identical. He also testified he took fingerprints of the defendant and compared them with other fingerprints in his file on a fingerprint card signed J. C. Davis, and that the fingerprints were identical.

Mr. C. W. Collier, a rural mail carrier, testified that from January until sometime in March of 1966, the mail box in front of the Kirk house bore the name "J. C.

Dav s" with a blank space between the "v" and "s". He never during that period delivered any mail to that box addressed to anyone at that house.

There was evidence that law enforcement officers, armed with a search warrant, entered the Kirk house on March 5, 1966. They found inside the house a whiskey still 'that measured out a little over a thousand gallons, and there were 960 gallons fermentors with all the distilling equipment, and 139 gallons of liquor was there in a room in one gallon jugs." The front room of the house was used for eating and sleeping purposes. It contained a hot plate, cooking utensils, dishes, a bed and a bunk or two, covers and various items of clothing. The officers saw no one at the house.

No evidence was presented on behalf of defendant.

■ The circumstances proven tending to connect the defendant with the possession and control of the premises where the still and whiskey were found were sufficient to take the case to the jury and to sustain the conviction. Tyre v. State, 20 Ala.App. 483, 103 So. 91; Watford v. State, 21 Ala.App. 428, 109 So. 174; Otwell v. City of Birmingham, 23 Ala.App. 299, 124 So. 406. The court ruled correctly in denying the motion to exclude the state's evidence and in overruling the motion for a new trial.

There was considerable testimony offered by the state to the effect that the defendant, Sonny Kyle Livingston and David Livingston were arrested in the parking lot of St. Jude's Hospital in Montgomery. Defendant and David Livingston were in a Pontiac automobile and Sonny Kyle Livingston was standing beside it. There was a gallon of illegal whiskey in that automobile. A few spaces away there was a greenish-blue 1965 Dodge automobile in which was found 199 gallons of untaxed whiskey. Sonny Kyle Livingston took the officers to within five or six hundred yards of the Kirk house and showed them

where the still was located. The defendant and both Livingstons were arrested at the hospital and charged with some violation of the Liquor Laws. On cross-examination one of the officers testified it was his understanding that a "deal" was made at the time that if Sonny Kyle Livingston would show them the still the charge against him would be reduced to "VPL," but that now the state is charging Sonny Kyle Livingston with possessing the still and manufacturing whiskey. The officer stated that in his estimation the still found at the Kirk house cost five to six thousand dollars.

The Livingstons and Jack LeRoy Teater, were indicted jointly with defendant, but a severance was granted the defendant.

■ Counsel urged that since appellant is an indigent person it is apparent that the expensive still did not belong to him but that some one else owned it; that defendant was duped into renting the house without having knowledge that it would be used in the operation of an illegal still. It is insisted that if the defendant is guilty of any offense it could only be for a violation of Section 136 of Title 29, Code of Alabama, 1940, which makes it a misdemeanor for a person to allow a whiskey still to be located or operated on premises under his control.

It is our view that the testimony concerning the activities of the parties at the hospital parking lot was inadmissible, but since no objections were interposed thereto, it became a matter for the jury's consideration along with the other evidence in the case, and whether the defendant possessed or aided and abetted in the possession of the still or in the manufacture of the whiskey was for the jury to determine under the evidence.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.

JOHNSON, J., not sitting.